UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DION POOLE, *et al.*,

    Plaintiffs,

    v.

UNITED STATES GOVERNMENT
PUBLISHING OFFICE, *et al.*,

    Defendants.

Civil Action No. 16-494 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiffs are sixteen black employees of the United States Government Publishing Office. They allege that after filing race-discrimination complaints with the Equal Opportunity Office, GPO supervisors made racial comments, removed equipment from Plaintiffs' section, and took actions to make their workplace less safe. They thus brought this suit under Title VII alleging both retaliation and a hostile work environment. Defendant now moves to dismiss on a variety of grounds. Because Plaintiffs' allegations are rather vague and imprecise, the Court will grant the Motion, but give them a chance to amend their Complaint to see if they can cure the defects.

**I. Background**

As it must at this stage, the Court treats all of the facts in the Amended Complaint as true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). The Court will also consider the facts set forth in Plaintiffs' Opposition to the Motion to Dismiss. See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015). Plaintiffs here allege two counts, retaliation and hostile work environment. Although the former cites Title IX, see ECF

1

No. 25 (Amended Complaint), ¶ 33, the Court, granting *pro se* litigants some leeway, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), will assume that Plaintiffs intended to invoke Title VII.

Plaintiffs work in the Digital Print Center (DPC) unit, which is "exclusively African-American." Am. Compl., ¶ 27. In 2008, they filed EEO complaints in which they alleged that "they were paid less than Caucasian employees of the GPO doing the same work because of their race." Id., ¶ 21. Because the Administrative Law Judge found that the administrative complaint was an attempt "to lodge a collateral attack on [the collective bargaining process]," it was dismissed for failure to state a claim. See ECF No. 35, Exh. 1 (EEOC Administrative Judge's Decision, May 20, 2013) at 7.

Plaintiffs allege that retaliation for filing this administrative complaint began "as soon as [it] was filed." Am. Compl. at 6. They first allege that Richard Tapella, the former Public Printer, referred to Plaintiffs as "my slaves" and their section as the "poor stepchild." Id. at 6-7. The Amended Complaint, however, does not mention when or how often these terms were used. Next, Plaintiffs allege that around 2010, two printers – namely, a Xerox iGen color printer and a Canon OCE 800 high-speed printer – were "taken from [P]laintiffs' section and transferred to higher salaried employees." Id., ¶ 30. Plaintiffs also claim that "[w]hen employees left the section, they were not replaced." Id., ¶ 31. As a result, one operator had to manage "two or three machines simultaneously," which Plaintiffs allege is an "unsafe work practice." Id. They also allege that they were not paid overtime and were not compensated for the additional work pressure. Id. (It is unclear if Plaintiffs ever pursued these grievances administratively.)

On June 15, 2015, Plaintiffs filed this action in the United States District Court for the Eastern District of Virginia, which transferred it to this Court on September 29, 2015. See ECF

Nos. 1, 14. Defendants GPO and Davita Vance-Cooks, the current Public Printer, now move to dismiss.

## II.  Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (citing Scheuer, 416 U.S. at 236), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

**III.   Analysis**

Defendants make multiple arguments in its Motion to Dismiss, including ones relating to Federal Rule of Civil Procedure 8, the Civil Service Reform Act, and the Federal Service Labor-Management Relations Act. This Court, however, need only address the simpler question of whether Plaintiffs have sufficiently stated a retaliation or hostile-work-environment claim, and it will look at each count in turn.

   A.   Retaliation

Plaintiffs first allege that GPO supervisors retaliated against them after they filed their EEO complaint. See Am. Compl., ¶ 28. As previously set forth, the alleged retaliatory acts include purportedly racial comments ("my slaves," "poor stepchild"), the removal of printers from their section, a failure to fill vacant positions, an unsafe workspace, an increased workload, and insufficient compensation. Id., ¶¶ 28-31.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim of retaliation under Title VII, Plaintiffs must plead: "1) that [they] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two." Morgan v. Fed. Home Loan Mortg. Corp., 328 F.3d 647, 651 (D.C. Cir. 2003) (quoting Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985)).

Adverse actions in retaliation claims, "referred to most frequently as materially adverse actions[,] 'encompass a broader sweep of actions than those in a pure discrimination claim.'" Aldrich v. Burwell, 2016 WL 3919823, at *5 (D.D.C. July 18, 2016) (quoting Baloch v.

4

Kempthorne, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008)).  In other words, "[r]etaliation claims . . . require less [than discrimination claims], barring any act that 'a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Joyce v. Office of Architect of Capitol, 966 F. Supp. 2d 15, 23 (D.D.C. 2013) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006)).

While Plaintiffs clearly engaged in statutorily protected activity when they filed the EEO complaint in 2008, Defendants argue that they have not adequately alleged any materially adverse actions or a causal link.  (There may also be an issue of administrative exhaustion.)  Indeed, the Complaint is unclear about which retaliatory acts were directed at which Plaintiffs and when.  These are facts the Court needs in order to assess who the proper Plaintiffs are and which acts can be deemed retaliatory.  In their Opposition, Plaintiffs rhetorically ask if they should have included details such as, "Poole and Dank were called 'Black Slaves' on July 21, Shannon and Jones were called 'Slaves' on December 23, and the machine Harris need [*sic*] to do his job safely as [*sic*] removed in August."  Opp. at 9.  This factual and temporal information is precisely the level of detail that may help them survive a Rule 12(b)(6) motion.  The same is true of their complaints of additional workload or unsafe conditions, which may support a retaliation claim for some Plaintiffs.  See White, 548 U.S. at 70-71 (finding "a jury could reasonably conclude that the reassignment of responsibilities [was] materially adverse to a reasonable employee" when new duties were "more arduous and dirtier"); Mogenhan v. Napolitano, 613 F.3d 1162, 1166-67 (D.C. Cir. 2010) (reversing dismissal of retaliation claim because increasing employee's "workload to five to six times that of other employees" may dissuade employee "from filing an EEO complaint").  Because Plaintiffs, now instructed, may be

able to allege facts sufficient to state a retaliation claim – at least as to some of them – the Court will give them an opportunity to amend.

### B. Hostile Work Environment

The same outcome obtains for Plaintiffs' hostile-work-environment count. As a preliminary matter, the government argues that Plaintiffs have not exhausted their administrative remedies on this issue. See Mot. at 15. More specifically, Defendants contend that Plaintiffs waived this claim when their counsel withdrew it during administrative proceedings. Id. at 16. Because exhaustion of Title VII administrative remedies is not jurisdictional, the Court does not take it up here. See Artis v. Bernanke, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011).

In any event, it is manifest that Plaintiffs' current allegations fall short of what is required. To state a hostile-work-environment claim, Plaintiffs must demonstrate that: "(1) [they are] member[s] of a protected class; (2) [they were] subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff[s'] protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question but nonetheless failed to either take steps to prevent it or afford the plaintiff prompt remedial action." Gordon v. Beers, 972 F. Supp. 2d 28, 36 (D.D.C. 2013).

This second prong requires that Plaintiffs establish that they were "subjected . . . to 'discriminatory intimidation, ridicule, and insult'" that a reasonable jury could find was "'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment.'" Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To determine whether a work environment is sufficiently hostile, the Court considers all the circumstances, "includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

6

and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Once again, there is simply not enough specificity here. It is possible that certain offensive comments from Tapella, an unsafe workspace, and a heavier and uncompensated workload may be "sufficiently severe or pervasive [so as] to alter the conditions of [Plaintiffs'] employment and create an abusive working environment." Baloch, 550 F.3d at 1201; see McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1108-10 (9th Cir. 2004) (holding black employee raised genuine issue of material fact with regard to existence of hostile work environment when white employees obtained new tires on their vehicles while his request was denied and he was forced to use worn tires until he suffered vehicle accident, and when black employees were subjected to racial epithets and racist graffiti at workplace). Yet to survive future dismissal, Plaintiffs must specifically allege which of them suffered a hostile environment and in which ways. As the Court is already permitting amendment on the retaliation count, it will do the same for this claim.

## IV. Conclusion

For the reasons stated above, the Court will issue a separate Order dismissing the Amended Complaint without prejudice, but permitting Plaintiffs to file a Second Amended Complaint setting out with more specificity their two counts. See Ciralsky v. CIA, 355 F.3d 661, 666-67 (D.C. Cir. 2004) (distinguishing between dismissing action and dismissing complaint).

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: November 30, 2016