**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DION POOLE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES GOVERNMENT PUBLISHING OFFICE, *et al.*, <br><br> Defendants. | Civil Action No. 16-494 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiffs are current and former employees of the United States Government Printing Office. They allege in this Title VII suit that, after filing race-based pay-discrimination complaints with the Equal Opportunity Office, their supervisors retaliated against them and subjected them to a hostile work environment. The Court previously dismissed their Amended Complaint for failing to set out their retaliation and hostile-work-environment counts with sufficient specificity, but did so without prejudice so as to give them a chance to cure those defects. Now that Plaintiffs have taken that opportunity and filed a Second Amended Complaint, Defendants GPO and Public Printer Davita Vance-Cooks renew their Motion to Dismiss on several grounds, most notably that Plaintiffs failed to exhaust their administrative remedies. Largely agreeing on this points, the Court will grant Defendants' Motion.

**I.      Background**

As it must at this stage, the Court treats all of the facts in Plaintiffs' operative Complaint as true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). It also considers the additional facts set forth in their Opposition, the documents attached to the

1

pleadings, and matters of which it may take judicial notice. See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015); Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); Pernice v. Bovim, No. 15-541, 2015 WL 5063378, at *3 (D.D.C. Aug. 26, 2015) (explaining courts may consider documents attached by defendant to motion to dismiss "if they are integral to its claim, they are referred to in the complaint, and their authenticity is undisputed").

Plaintiffs are fifteen current or recent African-American employees of the GPO and the estate of a sixteenth such individual who died during the course of this litigation. See ECF No. 48 (Second Amended Complaint) at 2. They work or worked in the GPO's Digital Print Center, the staff of which is "exclusively African-American." Id. at 6. In July 2008, they contacted the GPO's Equal Opportunity Office and subsequently filed several EEO complaints in which they alleged that "they were paid less than Caucasian employees of the GPO doing the same work because of their race." Id. at 5; see ECF No. 51-2 (EEOC Appeal Decision, Oct. 6, 2014) at 2. More specifically, the problem was that DPC employees were classified for pay-scale purposes as printing-plant workers — a lower-paid non-craft position — rather than journeymen bookbinders — a higher-paid craft position — even though their responsibilities, training, and expertise had evolved alongside advancements in technology such that "they performed the same work as higher-paid workers, more efficiently." SAC at 6-7. "[T]he GPO refused to establish performance standards and update [its] antiqu[ated] job descriptions," which Plaintiffs contend was based on race. Id. at 7-8.

Shortly after Plaintiffs filed their pay-discrimination EEO complaints, they began to experience what they argue was retaliatory harassment at work. Id. at 8-10. Around October 2008, four Plaintiffs heard Robert Tapella, the former Public Printer — i.e., the head of the GPO

— describe the group as "my slaves" while conducting a VIP tour of the DPC. Id. at 8-9. He further stated that they had become the "poor stepchild" of the GPO and referred to them as "the blacks" or "that black group." Id. at 9. Then, in April 2009, two printers — a Xerox iGen3 color printer and a Canon OCE 800 high-speed printer — were "taken from [Plaintiffs'] section and transferred to higher salaried employees in another department." Id. The GPO's Director of Labor Relations explained at the time that the iGen3 was transferred as "a necessary step in the Agency's plan to respond to customer demand for a wide variety of color products" and an effort "to consolidate nearly all of the production of color products in one area," id. at 94 (Letter from Michael Frazier, GPO Labor Relations Director, to Arthur Anderson, GCC/IBT Local 713-S President, Apr. 6, 2009), but Plaintiffs allege that removing the equipment was "a strategic move in response to the claim that their job descriptions did not adequately describe the work they do" and "was intended to weaken their disparate pay argument." Id. at 9.

In addition, "[w]hen employees left the section, they were not replaced for months." Id. "At one point, only two thirds of the approved jobs were filled." Id. As a result, one operator may have had "to operate two or three machines simultaneously." Id. Plaintiffs also were not paid overtime and thus were "not compensated for the additional work pressure." Id. Finally, "[n]ominations for awards were ignored," "[t]he salary scale for Graphic Processor Operator was lowered without explanation," and "[r]outine equipment servicing was stopped." Id. at 9-10.

Plaintiffs filed multiple EEO complaints alleging that they were subjected to "a hostile work environment with respect to issues related to their working conditions." EEOC Appeal at 2. They complained, *inter alia*, that GPO management failed to timely fill vacant positions, thus allowing the DPC to remain understaffed for two years and causing employees to be overworked; did not properly assign or offer overtime; did not "address[] safety concerns related

3

to . . . inoperable equipment"; and did not provide "adequate equipment." ECF No. 1 (Complaint) at 5 (Letter from Juanita Flores, EEO Assistant Director, to Kerrie Riggs & Cathy Harris, Plaintiffs' Counsel, Nov. 2, 2009) (listing "specific acts of harassment identified" in Plaintiffs' EEO complaints).

The Equal Employment Opportunity Commission accepted Plaintiffs' race-based pay-discrimination and hostile-work-environment claims for investigation in November 2009. See ECF No. 51-1 (EEOC Dismissal of Complaint, May 20, 2013) at 1 & n.4. In October 2010, Plaintiffs, acting through counsel (they did not proceed *pro se* through the administrative process), expressly withdrew their hostile-work-environment claim, leaving only the discriminatory-pay claim before the Commission. See ECF No. 35-2, Exh. 4 (Letter from Kerrie Riggs to Gladys Collazo, EEOC Supervisory Administrative Judge, Oct. 7, 2010) (Withdrawal Letter); EEOC Dismissal at 1 n.4; EEOC Appeal at 2. In May 2013, after undertaking a formal investigation, the Administrative Judge assigned to the matter concluded that the remaining pay claim was actually a collateral attack on the collective-bargaining process. As Plaintiffs were unable to obtain higher wages via this route, the AJ dismissed the complaint for failure to state a claim. See EEOC Dismissal at 6-7. Plaintiffs appealed the pay-discrimination decision, and the Commission affirmed. See EEOC Appeal at 5. It then denied Plaintiffs' request for reconsideration. See ECF No. 51-3 (EEOC Reconsideration Denial, Mar. 23, 2015) at 3.

Now acting *pro se*, Plaintiffs responded by filing this action on June 15, 2015, in the United States District Court for the Eastern District of Virginia, which transferred it to this Court on September 29, 2015. See Complaint; ECF No. 14 at 3. After Plaintiffs filed an Amended Complaint, see ECF No. 25, Defendants GPO and Davita Vance-Cooks, the current Public Printer, moved to dismiss. See ECF No. 35. Although Defendants offered multiple arguments

4

for dismissal, the Court focused on whether Plaintiffs had adequately stated retaliation and hostile-work-environment counts. See Poole v. United States Gov't Publ'g Office (Poole I), 219 F. Supp. 3d 80, 83 (D.D.C. 2016). It ultimately concluded that they had not, dismissed the Amended Complaint without prejudice, and permitted them to file a Second Amended Complaint that more clearly articulated their relevant factual allegations. Id. at 85.

Plaintiffs so filed and therein stated two causes of action under Title VII of the Civil Rights Act of 1964: retaliation and hostile work environment. See SAC at 10. In their Opposition, they make clear that the latter claim is alleged as a form of retaliation, rather than, say, a form of race discrimination. See ECF No. 55 (Opposition) at 5. Plaintiffs seek damages for emotional injuries and injunctive relief directing Defendants to write new job descriptions and performance standards that "accurately reflect[]" Plaintiffs' work "as the basis for a review with the union of their pay grade" and to cease "their racial slurs and retaliation." SAC at 11. Defendants now renew their Motion to Dismiss.

## II.    Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court "must treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. *Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," but they "must nonetheless plead factual matter that permits [the Court] to infer more than the mere possibility of misconduct." Brown, 789 F.3d at 150 (internal quotations and citations omitted).

**III.    Analysis**

Defendants rely on three arguments to support their Motion to Dismiss. They first contend that the Second Amended Complaint is fatally defective because Plaintiffs failed to exhaust administrative remedies with respect to their retaliation and hostile-work-environment claims. See ECF No. 51 (Motion) at 2. Second, they argue that Plaintiffs have not pled sufficient factual allegations to permit a reasonable factfinder to conclude that Defendants engaged in discrimination and retaliation in violation of Title VII. Id. And third, they assert that three Plaintiffs — Derik Shannon, Joseph Warren, and Howard Gilberts — should be dismissed

6

because they did not sign the Second Amended Complaint and thus failed to comply with Federal Rule of Civil Procedure 11(a). Id. at 2-3. Because the Court largely agrees with the first, it only briefly touches on the second and ignores the third. In explaining its reasoning, the Court begins with the law of exhaustion and the parties' positions, next examines the treatment of continuing violations, and concludes with an application of the doctrines to the facts here.

A. Exhaustion

Title VII's anti-discrimination provision makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Its anti-retaliation provision makes it unlawful for an employer "to discriminate against [an] employee[] . . . because he has opposed any practice" made unlawful by Title VII or "has made a charge, testified, assisted, or participated in" a Title VII proceeding." Id. § 2000e-3(a). Such retaliation can take the form of discrete acts or a hostile work environment, both of which are alleged here. See, e.g., Baird v. Gotbaum, 662 F.3d 1246, 1248-51 (D.C. Cir. 2011).

Prior to filing a Title VII lawsuit in federal court, individuals must timely exhaust the administrative processes established by the EEOC. See 42 U.S.C. § 2000e-16(c); Niskey v. Kelly, No. 14-5285, 2017 WL 2485304, at *3 (D.C. Cir. June 9, 2017); Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010). The purpose of these exhaustion requirements is "'to give federal agencies an opportunity to handle matters internally whenever possible,' and to impose on employing agencies 'the opportunity as well as the responsibility to right any wrong that it might have done.'" Niskey, 2017 WL 2485304, at *5 (quoting Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985)).

Exhaustion is "an essential element" of Title VII. Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) (citation omitted). If an employee fails to exhaust these administrative processes, a court may dismiss his action under Federal Rule of Civil Procedure 12(b)(6). Niskey, 2017 WL 2485304, at *5. These administrative-exhaustion requirements, however, are not jurisdictional. Id.; see also Artis v. Bernanke, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011). "[A]n employee who missteps in the process may avoid dismissal if he qualifies for equitable relief" — *e.g.*, equitable tolling, estoppel, or waiver — "by demonstrating good cause for the procedural failure." Niskey, 2017 WL 2485304, at *5; see also Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). Because the failure to exhaust administrative remedies is an affirmative defense, the defendant, rather than the plaintiff, "bears the burden of pleading and proving it." Bowden, 106 F.3d at 437. Only if and when the defendant meets that burden does the plaintiff then "bear[] the burden of pleading and proving facts supporting equitable avoidance of the defense." Id.

Here, Defendants maintain that Plaintiffs never brought a retaliation claim "at any point during the EEO proceedings." Mot. at 12. As proof, they attach the EEOC's three decisions on Plaintiffs' complaints, none of which mentions — let alone decides — a retaliation claim of any form. As to hostile work environment, Defendants point to the letter from Plaintiffs' counsel withdrawing that claim from the EEOC's consideration. Id. at 11.

In response, Plaintiffs do not argue that they presented allegations of discrete retaliatory acts to the EEOC. They do, however, rejoin that "it is not possible to pin down" from "the record currently before the [C]ourt" whether their EEO hostile-work-environment charges "were related to race discrimination" or were "the consequence of retaliation." Opp. at 6. In other words, they imply that they <u>did</u> raise retaliatory hostile-work-environment allegations before the

EEOC. Even if this dubious assertion were true, however, the record makes clear that <u>no</u> hostile-work-environment claim proceeded through the administrative process.

In withdrawing their hostile-work-environment claim from the agency's consideration, Plaintiffs' counsel stated: "Please be advised that the Complainants . . . are withdrawing their claim of a hostile work environment on the basis of race. Complainants are still pursuing their <u>remaining claim</u> of disparate treatment and disparate impact on the basis of their race with respect to their rate of pay." Withdrawal Letter (emphasis added). Not only did that statement explain that the hostile work environment complained of in the EEO charges was based solely on race, but it also left no room for the possibility that Plaintiffs had additionally raised and intended to exhaust a hostile-work-environment claim based on retaliation. On the contrary, it made clear that, upon withdrawal of the race-based hostile-work-environment claim, the <u>only</u> claim left before the EEOC was that for disparate treatment or disparate impact from pay discrimination. The EEOC thus never decided <u>any</u> hostile-work-environment claim, whether race-based or retaliatory, <u>see</u> EEOC Dismissal at 1 n.4; EEOC Decision at 2; it dealt solely with pay discrimination. Plaintiffs, in sum, cannot be considered to have administratively exhausted either a hostile-work-environment or retaliation claim. <u>See, e.g.</u>, <u>Noisette v. Geithner</u>, 693 F. Supp. 2d 60, 67-68 (D.D.C. 2010) (holding plaintiff failed to exhaust administrative remedies where he withdrew his EEOC appeal, then filed lawsuit); <u>Mackay v. U.S. Postal Serv.</u>, 607 F. Supp. 271, 276 (E.D. Pa. 1985) ("Exhaustion of administrative relief before resorting to the courts does not require mere initiation of prescribed administrative procedures; they must be pursued to their conclusion.").

In an attempt to obtain a reprieve from their clear failure to exhaust either cause of action asserted here, Plaintiffs argue that they had no obligation to do so because those claims were

sufficiently related to the pay-discrimination claim they did exhaust. See Opp. at 6-8. The Court cannot agree, and its reasons for so deciding require a bit of explanation.

B. Development of Law

In 2002, the Supreme Court sought to clarify the application of Title VII's timely filing requirements to continuing violations — *i.e.*, a series of related acts or a discriminatory policy or system maintained over time — like the ones alleged here. The case of National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), concerned a plaintiff who brought race-discrimination, retaliation, and hostile-work-environment claims based on events dating back nearly four-and-a-half years before he filed a charge with the EEOC, even though Title VII required him to file charges with the EEOC within 300 days of the discriminatory practice. Id. at 105-06. The question before the Supreme Court was "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside [the] statutory time period." Id. at 105.

Morgan first held that discrete discriminatory or retaliatory acts were not actionable if not timely filed, even if they were "related to acts alleged in timely filed charges." Id. at 113. In other words, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and a claimant must file an EEOC charge for each discrete act within the appropriate time limit. Id. Turning next to hostile-work-environment claims, which it explained "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct, id. at 115, the Court held that for a "charge to be timely, the employee need only file a charge within [the requisite number of] days of any act that is part of the hostile work environment." Id. at 118 (emphasis added).

As the attentive reader surely noticed, Morgan dealt with timeliness rather than exhaustion, and "with a factual scenario involving allegations of discrete discriminatory acts that

10

had occurred before the plaintiff filed an administrative complaint." Mount v. Johnson, 36 F. Supp. 3d 74, 84 (D.D.C. 2014). It "did not address exhaustion in the context of discriminatory or retaliatory incidents that occurred after an administrative complaint is filed," id., which is the issue here. Absent such guidance from the Supreme Court, lower courts have had to grapple with how to apply Morgan to this scenario.

Before Morgan, courts generally did not require federal employees to separately exhaust their administrative remedies for claims that arose after the filing of an administrative complaint if the unfiled claims were "'like or reasonably related to' [the] claims they did file with their agencies." Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)); see also Mount, 36 F. Supp. at 84 (citing Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 136 (D.D.C. 2009) (collecting cases)). In Morgan's wake, all but one of the Courts of Appeals to have addressed the question of whether and to what extent the Supreme Court's decision displaced those earlier cases have maintained some form of the "reasonably related" exhaustion exception. Compare Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 852 n.1 (8th Cir. 2012) (contemplating that plaintiff who timely filed administrative charge alleging "ongoing retaliation" need not file new such charge "with respect to each continuing incident of retaliation"); Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 594 (4th Cir. 2012) ("[S]o long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'") (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)); Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir. 2008) ("Although the general rule is that a Title VII plaintiff may not pursue an unexhausted claim, we will consider all claims to the extent they are reasonably related to those that the

11

plaintiff did assert in a timely EEO charge.") (citation omitted) with Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (holding Morgan's rule "is equally applicable . . . to discrete claims based on incidents occurring after the filing of Plaintiff's EEOC complaint").

The D.C. Circuit has thus far declined to take a position on this question. See Payne, 619 F.3d at 65; Weber v. Battista, 494 F.3d 179, 184 (D.C. Cir. 2007); Mount v. Johnson, 664 F. App'x 11 (D.C. Cir. 2016) (unpublished). Several district-court judges in this Circuit, however, have weighed in. The majority of those to do so "have interpreted Morgan to require exhaustion for all discrete acts of retaliation after an administrative charge is filed, 'regardless of any relationship that exists between those discrete claims and any others.'" Hicklin v. McDonald, 110 F. Supp. 3d 16, 19 (D.D.C. 2015) (quoting Rashad v. Wash. Metro Area Transit. Auth., 945 F. Supp. 2d 152, 165-66 (D.D.C. 2013) (collecting cases)). They reasoned that "requiring exhaustion of each discrete claim most faithfully reflects Morgan and the purpose of the exhaustion doctrine, namely, 'to give the agency notice of a claim and the opportunity to handle it internally so that only claims plaintiff has diligently pursued will survive.'" Id. (quoting Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005)). A minority, however, have continued to recognize an exception to the administrative-exhaustion requirement where unexhausted discrimination and retaliation claims satisfy the "like or reasonably related" test. Id. at 19-20 (collecting cases). Their explanation for doing so is that "'the exhaustion doctrine was not intended to become a massive procedural roadblock to access to the courts' and 'where the ends of administrative exhaustion have been served by the pursuit of administrative remedies with regard to the subsequent acts, separate initiation of administrative exhaustion for post-complaint conduct is not required.'" Id. at 20 (quoting Velikonja v. Mueller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004)).

12

This Court need not choose between the two interpretations here, as Plaintiffs' claims fail regardless of the approach used. First, they did not administratively exhaust hostile-work-environment or retaliation charges, as required under the D.D.C.-majority approach. Second, most of their current claims plainly are not "like or reasonably related to" the pay-discrimination charge they administratively filed and fully pursued, as required under the D.D.C.-minority approach. Those that come close are not pled at a sufficiently specific level to state a claim of hostile work environment or retaliation. As the first conclusion is self-evident from the facts regarding Plaintiffs' EEO complaints discussed above — *i.e.*, their failure to file an EEO discrete-acts retaliation claim and their withdrawal of their EEO hostile-work-environment claim — the Court need only discuss the second.

C. Application

For a Title VII claim "to be regarded as 'reasonably related' to a filed [EEOC] charge . . . , it must '[a]t a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" Payne, 619 F.3d at 65 (quoting Park, 71 F.3d at 907). In other words, the "analysis centers on whether the allegations that were specifically put before the agency and the new allegations the plaintiff seeks to litigate constitute the same cause of action and are factually similar such that they would be discovered during the agency's investigation." Mount, 36 F. Supp. at 85-86. Although courts have cautioned that this requirement "not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths,'" they also must be careful not to "allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." Park, 71 F.3d at 907 (quoting Loe v. Heckler, 768 F.2d 409, 417 (D.C. Cir. 1985)). Indeed, "the goals behind the requirement of prior resort to administrative relief would be frustrated if the

filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." Id. at 908 (quoting Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)).

Several discrimination and retaliation cases from this district help illuminate the differences between those claims that warrant application of the exhaustion-requirement bar and those that do not. See, e.g., Mount, 36 F. Supp. 3d at 88 (holding EEO complaint alleging non-selection for position based on race discrimination was not sufficiently like allegations of non-selection based on retaliation, as different causes of action cannot be considered "of a like kind"); Nguyen v. Mabus, 895 F. Supp. 2d 158, 184 (D.D.C. 2012) (allegations plaintiff had been excluded from "budget management deliberations/decisions" were "not substantially similar" to claim defendant had cut funding for plaintiff's programs but were "similar" to allegation defendant excluded him from funding decisions); Pierson v. Washington Metro. Area Transit Auth., 821 F. Supp. 2d 360, 366 (D.D.C. 2011) (holding EEOC charge concerning WMATA employee's termination for speaking out against sexual harassment was reasonably related to allegation she was subsequently denied employment in other WMATA divisions but not reasonably related to allegations WMATA harassed her regarding reimbursement for overpaid vacation pay); Thomas v. Vilsack, 718 F. Supp. 2d 106, 121 (D.D.C. 2010) (holding plaintiff's allegations in EEO complaint that "she was repeatedly denied promotions" were not like unexhausted allegation that she was stripped of her Chief Information Officer duties); Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility, 540 F. Supp. 2d 231, 236 (D.D.C. 2008) (holding retaliation claim was not like or reasonably related to allegations in EEOC charge, which focused only on age and national-origin discrimination and did not reference plaintiff's having complained about discrimination or filing incident reports); Hazel v.

14

Washington Metro. Area Transit Auth., No. 02-1375, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006) (holding EEOC charges alleging ongoing retaliation and describing history of sexual and racial harassment and discrimination, including retaliatory non-selection and termination attempts, were reasonably related to unexhausted allegations of two subsequent retaliatory non-selections and termination).

In light of these analogous cases, most of Plaintiffs' retaliation and hostile-work-environment claims plainly do not satisfy the "like or reasonably related" test when compared to the targeted pay-discrimination allegations set forth (and not withdrawn) in their EEO complaint. Specifically, the allegations that Defendants made disparaging statements related to Plaintiffs' race and "activism," failed to timely fill open positions, ignored award nominations, and did not routinely service equipment, see SAC at 8-10, are not sufficiently similar to, nor could they reasonably be expected to arise from the administrative investigation of, the pay-discrimination allegations, which focused on Defendants' refusal to establish performance standards and update outdated job descriptions, and thus to pay Plaintiffs a wage commensurate with their work. Id. at 5-8; see also EEOC Dismissal at 3-5; EEOC Appeal Decision at 2-4. These retaliation and hostile-work-environment claims, accordingly, cannot survive even under the interpretation of Morgan adopted by the minority of courts in this district.

Allegations that Defendants removed two printers to limit Plaintiffs' job responsibilities and lowered the salary scale for Graphic Processor Operator, see SAC at 9-10, are arguably more closely tied to the pay-discrimination allegations. But even if the Court were to consider them as exceptions to the exhaustion requirement, they are not sufficiently pled to state a plausible claim to relief. Iqbal, 556 U.S. at 678. The SAC does not explain, for example, how Plaintiffs used the two Xerox and Canon printers or how their removal affected Plaintiffs' work, nor does it specify

15

how much the salary scale for Graphic Processor Operator was lowered, when it was lowered, or which Plaintiffs were affected. These allegations thus are not enough to state a retaliation or hostile-work-environment claim. See Morgan v. Fed. Home Loan Mortg. Corp., 328 F.3d 647, 651 (D.C. Cir. 2003) (requiring, for *prima facie* case of retaliation, that plaintiff show employer took materially adverse action and causal connection between such action and statutorily protected activity); Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (requiring, to prevail on hostile-work-environment claim, that plaintiff show employer subjected him to "'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'") (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss without prejudice for failure to exhaust administrative remedies and to state claims upon which relief can be granted. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 7, 2017